FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2012 DEC 21  PH 1: 50

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

BY_____

STATE OF MARYLAND,      *
DEPARTMENT OF THE ENVIRONMENT     *
1800 Washington Boulevard     *
Baltimore, Maryland  21230     *
    *
         Plaintiff     *
    *
v.     *
    *
GENON MARYLAND ASH     *    Civil Action No.:    DKC12CV3755
MANAGEMENT, LLC     *
601 13th Street NW     *
Suite 580 N     *
Washington DC 20005     *
    *
And     *
    *
GENON MID-ATLANTIC, LLC     *
601 13th Street NW     *
Suite 580 N     *
Washington DC 20005     *
    *
         Defendants.     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

The Plaintiff, State of Maryland, Department of the Environment ("the "Department"), by and through its attorneys, Douglas F. Gansler, Attorney General, and Steven R. Johnson, Principal Counsel, and Richard F. Waddington, Assistant Attorney General, files this Complaint for civil penalties and injunctive relief against Defendants, GenOn Maryland Ash Management, LLC ("GenOn Ash") and GenOn Mid-Atlantic, LLC ("GenOn Mid-Atlantic") for the following reasons:

### STATEMENT OF THE CASE

1.     This is a civil action instituted by the Department to compel Defendants, GenOn Ash and

GenOn Mid-Atlantic, to abate significant and ongoing violations of state and federal water pollution laws and regulations at the coal combustion waste disposal site they own and operate at Martinsburg and Wasche Roads in Montgomery County, Maryland, known as the Westland Landfill ("the Disposal Site").

2.      Mirant Maryland Ash Management, LLC ("Mirant Ash") acquired ownership of the Disposal Site from Potomac Electric Power Company ("PEPCO") on December 22, 2000.  Mirant MD Ash, LLC and Mirant Mid-Atlantic, LLC changed their names to GenOn MD Ash Management, LLC, and GenOn Mid-Atlantic, LLC, respectively, in connection with a corporate merger with RRI in December 2010.

3.      The Disposal Site is located on approximately 288 acres of land adjacent to "Little Stream" and "Big Stream," which merge together and lead to the Potomac River in Montgomery County.

4.      The process of electrical generation through the combustion of coal produces waste byproducts, including fly ash.  This coal combustion waste contains high concentrations of arsenic, cadmium, lead, mercury, copper, selenium, zinc, and other pollutants that are toxic to humans, aquatic life, and wildlife.  Defendants and their predecessors have been disposing of these wastes in three disposal pits at the site since 1970.

5.      Inadequate construction of the disposal pits and operation of the disposal area have resulted in contaminated leachate escaping the disposal pits via groundwater and constructed outfalls and discharging to two unnamed tributaries known as "Little Stream" and "Big Stream," which merge together at the western end of the Disposal Site and lead to the Potomac River.  Passive treatment systems to collect leachate from the pits into holding ponds have failed to stop the discharges.  The ponds discharge polluted water through constructed outfalls that discharge when the water in the pond reaches a certain level and by seepage through the groundwater.

2

6.     Although GenOn Ash holds a discharge permit, the discharges alleged in this Complaint are not authorized under that permit and are illegal under State and federal law.  These discharges present a danger to the environment and natural resources of the State of Maryland, and a danger to the health and safety of its citizens.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action pursuant to 33 U.S.C § 1365(a).  The Court has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. §1367.

8.     By letter dated January 3, 2011, the Department gave notice of its intention to bring this action as required by the Clean Water Act, 33 U.S.C. § 1365, to the Administrator of the Environmental Protection Agency ("EPA"), the Attorney General of the United States, the Defendants, and the State of Maryland.  A copy of the January 3, 2011 letter is attached hereto as Exhibit A.

9.     Sixty days have passed since the notice was served, the violations complained of in the notice letter are continuing or are reasonably likely to continue, and the Defendants remain in violation of the Clean Water Act.

10.    Venue in this District is proper pursuant to 42 U.S.C. § 6972, 28 U.SC. § 1391(b), and 33 U.S.C. § 1365 (c)(1).

## PARTIES

11.    The Plaintiff is a State agency within the Executive Branch of the State of Maryland that is charged with the responsibility to protect the environment and enforce the State's environmental laws and the comprehensive federal-state scheme to protect the waters of the State and the navigable waters of

the United States.  Md. Code Ann., Envir. § 1-401.  The Plaintiff is also a "citizen" authorized to commence a civil action under the Clean Water Act.  33 U.S.C. § 1365.

12.     Defendant GenOn Mid-Atlantic is incorporated under the laws of Delaware and is doing business in Montgomery County, Maryland.  GenOn Mid-Atlantic, the parent company of GenOn Ash, operates the Dickerson Generating Facility ("Dickerson"), which generates the coal combustion waste that is disposed of at the Disposal Site, and arranges and directs the disposal of its coal combustion waste by GenOn Ash.

13.     Defendant GenOn Ash is incorporated under the laws of Delaware and is doing business in Montgomery County, Maryland.  GenOn Ash is the fee simple owner of the Disposal Site, where it disposes of coal combustion waste from GenOn Mid-Atlantic's electric generating station, and where the water pollution violations that are the subject of this Complaint occurred and continue to occur.

## LEGAL BACKGROUND

### A.     Federal Law

14.     Section 1251 of the Clean Water Act establishes the federal statutory framework for the restoration and maintenance of the chemical, physical, and biological integrity of the Nation's waters.  Section 1342(a) requires a person to hold a National Pollutant Discharge Elimination System ("NPDES") discharge permit before discharging any pollutant into navigable waters.

15.     The Clean Water Act grants citizens the authority to bring suit against "any person...alleged to be in violation" of an "effluent standard or limitation" established under the Clean Water Act and to seek penalties for such violations.  33 U.S.C. § 1365(a)(1).  "Effluent standard or limitation" means "an unlawful act under subsection (a) of section 1311, an effluent limitation or other limitation under section 1311 or 1312 [or] a permit condition thereof issued under section 1342."  33

U.S.C. § 1365(f). Accordingly, citizens may bring citizen suits to enjoin the discharge of pollutants without an NPDES permit or in violation of an NPDES permit, and may seek civil penalties for such violations.

16.     The Clean Water Act provides for civil penalties of up to $37,500 per violation beginning January 13, 2009, and $32,500 per violation prior to that date. Each day of violation constitutes a separate violation. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4. The Clean Water Act also authorizes the Court to award injunctive relief and the costs of litigation, including reasonable attorney's fees and expert witness fees. 33 U.S.C. §§ 1319(b) and 1365(a) and (d).

17.     The Administrator of the EPA may delegate issuance of NPDES discharge permits to states desiring to administer their own discharge permit programs so long as they meet the applicable criteria. 33 U.S.C. § 1342(b).

18.     The EPA has delegated authority to the State of Maryland to administer its own discharge permit program and to issue NPDES discharge permits for discharges into navigable waters within its jurisdiction.

**B.      State Law**

19.     Sections 9-301 through 9-351 of the Environment Article establish the statutory framework for the prevention, abatement and control of pollution of waters of the State. Section 9-322 prohibits a person from discharging any pollutant into the waters of the State. Placing a pollutant in a position likely to pollute waters of the State constitutes a discharge. Section 9-323 requires a person to hold a discharge permit issued by the State before the person may operate a disposal system or any other facility, if its operation could cause or increase the discharge of pollutants into waters of the State.

20.     Section 26.08.02.09C(l) of the Code of Maryland Regulations ("COMAR") provides that

5

the discharge of pollutants may not cause groundwater to exceed the primary or secondary drinking water standards established in COMAR 26.04.01.  COMAR 26.04.01.06A establishes maximum contaminant levels ("MCL") for inorganic chemicals in drinking water.  COMAR 26.08.02.03-2 establishes maximum criteria for toxic substances in surface waters.

21.     The Department enforces the laws pertaining to water pollution control in accordance with Sections 9-334 through 9-344 of the Environment Article.  Section 9-339 authorizes the Department to bring actions for injunctive relief against any person who violates any provision of Title 9, Subtitle 3, of the Environment Article or any rule or regulation adopted thereunder.

22.     Section 9-342(a) of the Environment Article authorizes the Court to impose civil penalties of up to $10,000 per violation of Title 9, Subtitle 3, or any rule or regulation adopted thereunder.  Each day of violation constitutes a separate violation. Maryland law also authorizes the Court to award the Department the reasonable costs incurred in conducting environmental health monitoring or testing, including the cost of collecting and analyzing soil samples, surface water samples, or groundwater samples for the purpose of assessing the effect of a discharge on public health and the environment. Md. Code Ann., Envir. § 9-342.2.

## FACTUAL ALLEGATIONS

**A.     Coal Combustion Waste**

23.     GenOn Mid-Atlantic generates thousands of tons of coal combustion waste annually at its electrical generating stations, including the Dickerson Generating Station located in Montgomery

6

County, Maryland, which uses the Disposal Site to manage its ash.  This waste is the residue generated by burning coal and is derived primarily from incombustible mineral material.  Coal combustion waste contains a number of pollutants including concentrations of toxic pollutants such as arsenic, cadmium, copper, lead, mercury, selenium and zinc.

24.     These pollutants, when improperly disposed of or controlled, leach or are otherwise discharged into groundwater and surface water thereby causing the contamination or other alteration of the physical, chemical, or biological properties of these waters.  This contamination adversely impacts water supplies, aquatic organisms, wildlife, and humans, and renders the waters harmful or detrimental to public health, safety, or welfare and legitimate beneficial uses.

**B.      Disposal and Treatment of Coal Combustion Waste at the Disposal Site**

25.     The Disposal Site consists of approximately 288 acres, of which 180 acres are utilized for the disposal of coal combustion waste.  These 180 acres are divided into three unlined disposal pits known as Areas A, B, and C.  Area C is the westernmost disposal site and has been completely filled, capped with earth, and vegetated.  Area B is located immediately to the west of Area A and is currently an active storage disposal site that is still receiving fly ash.  Area A is located in the easternmost portion of the property and will be utilized when Area B is filled to capacity.

26.     More than 3.8 million cubic yards, or 5,827,600 tons, of coal combustion waste have been disposed at the Disposal Site over the last thirty years.  Approximately 150,000 cubic yards of waste are placed at the Disposal Site every year.

27.     Because the disposal pits were not lined and impermeable caps were not installed throughout, rainwater and snow melt penetrate the disposal pits, flow through the accumulated waste, and leach out pollutants, which then enter the groundwater and are discharged into "Little Stream" and

7

"Big Stream," which merge together and lead to the Potomac River. These pollutants include, but are not limited to, aluminum, arsenic, barium, cadmium, chloride, chromium, cobalt, copper, iron, lead, magnesium, manganese, nickel, pH, selenium, sulfates, total suspended solids, and zinc.

28.     Three settling or treatment ponds are used to collect stormwater runoff, groundwater and leachate pumped from three flyash disposal pits. Ponds 2 and 3 are in use but the permittee rarely reports a discharge from their constructed outfalls. Pond 2 is unlined and Pond 3 was not lined with a synthetic liner until 2010. Wastewater in the ponds is aerated and treated with soda ash before it is discharged through Outfalls 002 and 003. Outfall 002 discharges storm water runoff from Area B to an unnamed tributary leading to the Potomac River. Outfall 003 discharges storm water runoff from Areas B & C to an unnamed tributary leading to the Potomac River.   Because the settling ponds are not adequately lined, heavy metals sink to the bottom of the ponds and leach into the groundwater aquifer that is hydro-geologically connected to tributaries of the Potomac River.

29.     The wastewater and leachate collection/treatment system fails to prevent unauthorized discharges of pollutants from entering groundwater and surface waters from the disposal pits, settling ponds, and outfalls. Many of the pollutants do not settle, dissolve in the water in the ponds, and then discharge directly via Outfalls 002 and 003 to "Little Stream" and "Big Stream," which merge together and lead to the Potomac River.

## C.     Water Bodies Impacted

30.     "Little Stream," "Big Stream," and the Potomac River are navigable waters of the United States and waters of the State of Maryland. 33 U.S.C. § 1362(7); Md. Code Ann., Envir. § 9-101(l). They are Use I waters of the State protected for water contact recreation, fishing, aquatic life and

8

wildlife. These waters are valuable and unique ecological areas located within the Chesapeake Bay watershed.

31.     Groundwater at the Disposal Site flows southeast to west following the contour of the land and the direction of the streambeds. The Disposal Site lies within the New Oxford formation, comprised of weathered and unweathered sandstone and siltstone that is porous and has high conductivity. Water movement is primarily mobile through vertical fractures and/or flow parallel to bedding planes. In areas of intense fracturing, water flow is equivalent to water flow through porous rock content. Fractured rock exists northwest of Area B. Water flows into this area and then rapidly disappears, facilitating leachate contamination of groundwater, detrimentally affecting water quality beneath the fill areas, as shown by increased contaminant levels in monitoring wells. Groundwater and surface water sampling confirms that pollutants present in the groundwater below the disposal pits discharge to "Little Stream" and "Big Stream," which merge and lead into the Potomac River.

**C.     The Discharge Permit**

32.     On July 1, 1995, the Department issued State Discharge Permit 91-DP-1680, NPDES Discharge Permit MD 0057584 (the "Discharge Permit") to PEPCO to discharge certain pollutants from Outfalls 001, 002, and 003. The Discharge Permit is the current applicable permit and was based on an application submitted by PEPCO on September 12, 1990. The pollutants covered in the Discharge Permit and the effluent limits for those pollutants were dependent upon representations made by PEPCO in its application as to the pollutants and concentrations of pollutants proposed to be discharged.

33.     On or about December 22, 2000, when Mirant Ash purchased the Disposal Site from PEPCO, the existing Discharge Permit was transferred from PEPCO to Mirant Ash, and Mirant Ash assumed PEPCO's obligations under the Discharge Permit. Mirant MD Ash, LLC and Mirant Mid-

Atlantic, LLC changed their names to GenOn MD Ash Management, LLC, and GenOn Mid-Atlantic, LLC, respectively, in connection with a corporate merger with RRI in December 2010.

34.     The Discharge Permit does not authorize the discharge of pollutants from Outfalls 001, 002, and 003.

35.     The Discharge Permit also does not authorize discharges of any pollutants into "Little Stream" or "Big Stream" and tributaries of the Potomac River from any point other than through Outfalls 001, 002, and 003. It also does not authorize discharges of any pollutants to groundwater, which then flows into tributaries of the Potomac River.

36.     Disclosure in the application of all pollutants and their concentrations proposed to be discharged from a facility is critical because the Department relies on these disclosures to determine which pollutants to include in the Discharge Permit and whether to establish effluent limits for those pollutants. Failure to report discharges of pollutants and their concentrations from all point sources makes it impossible for the Department to determine the impact of proposed discharges on the receiving waters and what permit limits are necessary to protect water quality.

37.     GenOn Ash is required to collect groundwater samples at the Site, as well as samples from "Little Stream" and "Big Stream," and to report the findings at each of the monitoring wells and surface water locations. The Disposal Site is monitored by eight groundwater wells as described in the Discharge Permit. Water quality of "Little Stream" and "Big Stream" is sampled from twenty-six surface water locations that border the Disposal Site, and water quality of the treatment ponds and discharges are sampled from Outfalls 002 and 003.

10

**E.      Unauthorized Discharges of Pollutants**

38.      Discharges to groundwater of any pollutants from the disposal pits and treatment ponds are unauthorized.

39.      Quarterly monitoring results submitted by GenOn Ash from groundwater monitoring wells around the disposal pits demonstrate unauthorized discharges of sulfates, total dissolved solids ("TDS"), manganese, iron, chlorides, and aluminum in concentrations that cause or contribute to violations of water quality standards.

40.      Mirant Ash submitted four quarterly discharge monitoring reports between the third quarter of 2009 and the second quarter of 2010 showing exceedances of Maximum Contaminant Levels ("MCL") of sulfates, iron, TDS, dissolved manganese, dissolved aluminum, and chloride in all of the downgradient groundwater monitoring wells that are required to be sampled under the Discharge Permit.

41.      These groundwater results demonstrate discharges of pollutants from unauthorized discharge points and/or in concentrations higher than reported by PEPCO in the 1990 Discharge Permit application.

**COUNT I**
**Violation of 33 U.S.C. § 1311**
**(Unauthorized Discharge of Pollutants to Navigable Waters of the United States)**

42.      The Department incorporates by reference the allegations set forth in paragraphs 1-39 as though fully set forth herein.

41.      Sampling results from groundwater monitoring wells, from Outfalls 002 and 003, and from "Little Stream" and "Big Stream" demonstrate that Defendants have discharged and continue to discharge pollutants from the disposal pits, treatment/settling ponds that are not authorized by the Discharge Permit. These sampling results also demonstrate that pollutants have discharged and are being

discharged to "Little Stream" and "Big Stream" and tributaries of the Potomac River from the disposal pits and settling ponds by leaking into groundwater that is hydro-geologically connected to "Little Stream," "Big Stream," and tributaries of the Potomac River. Discharges from these points are not authorized by the Discharge Permit.

42.     Each discharge of an unauthorized pollutant constitutes a separate violation of the NPDES Discharge Permit and Section 1311 of the Clean Water Act. These unauthorized discharges have been occurring daily since at least 1995.

43.     A person who violates Section 1311 of the Clean Water Act or a Discharge Permit issued under Section 1342 of the Clean Water Act shall be subject to a civil penalty of up to $37,500 per violation per day beginning January 13, 2009 and $32,500 per violation per day prior to that date. Each day of violation constitutes a separate violation. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4.

44.     The Clean Water Act also authorizes the Court to award injunctive relief and the costs of litigation, including reasonable attorney's fees and expert witness fees. 33 U.S.C. §§ 1319(b) and 1365(a) and (d).

45.     Unless enjoined by an order of the Court, the Defendants will continue to discharge pollutants from coal combustion waste leachate to the waters of the United States.

**COUNT II**
**Violation of Md. Code Ann., Envir. §§ 9-322 and 9-323**
**(Unauthorized Discharge of Pollutants to Surface Waters of the State)**

46.     The Department incorporates by reference the allegations set forth in paragraphs 1-45 as though fully set forth herein.

47.     Sampling results from groundwater monitoring wells, from the settling ponds, and from

"Little Stream" and "Big Stream" demonstrate that Defendants are discharging pollutants from the disposal pits and the settling ponds into "Little Stream," "Big Stream," and tributaries of the Potomac River that are not authorized by the Discharge Permit.

48.     In addition, sample results of the wastewater in the ponds demonstrate the presence of unauthorized pollutants in a position likely to pollute "Little Stream," "Big Stream," and tributaries of the Potomac River because of the likelihood that they will leach into the groundwater.

49.     Each discharge of an unauthorized pollutant and of a pollutant in an unauthorized amount to waters of the State constitutes a separate violation of the Discharge Permit and Sections 9-322 and 9-323 of the Environment Article.  These unauthorized discharges have been occurring daily for three years.

50.     A person who violates Title 9, Subtitle 3 of the Environment Article or any rule, regulation, order or Discharge Permit adopted or issued thereunder shall be subject to a civil penalty of up to $10,000 per day for each such violation.  Md. Code Ann., Envir. § 9-342.

51.     Maryland law also authorizes the Court to award the Department the reasonable costs incurred in conducting environmental health monitoring or testing, including the cost of collecting and analyzing soil samples, surface water samples, or groundwater samples for the purpose of assessing the effect of a discharge on public health and the environment.  Md. Code Ann., Envir. § 9-342.2.

52.     Unless enjoined by an order of the Court, the Defendants will continue to discharge pollutants from coal combustion waste leachate to the waters of the United States.

13

## COUNT III
### Violation of Md. Code. Ann., Envir. §§ 9-322 and 9-323
### (Unauthorized Discharge of Pollutants to Groundwaters of the State)

53.     The Department incorporates by reference the allegations set forth in paragraphs 1-52 as though fully set forth herein.

54.     A person is required to hold a discharge permit before discharging any pollutants into waters of the State.  Groundwater is a water of the State.  Md. Code Ann. § 9-101(1); Md. Code Ann., Envir. § 9-322.

55.     Sampling results from groundwater monitoring wells at the Disposal Site demonstrate that Defendants are discharging pollutants from the disposal pits and settling ponds to the groundwater that are not authorized by any permit.  These unauthorized discharges have been occurring daily for three years.

56.     A person who violates Title 9, Subtitle 3 of the Environment Article or any rule, regulation, order or Discharge Permit adopted or issued thereunder shall be subject to a civil penalty of up to $10,000 per day for each such violation.  Md. Code Ann., Envir. § 9-342.

57.     Maryland law also authorizes the Court to award the Department the reasonable costs incurred in conducting environmental health monitoring or testing, including the cost of collecting and analyzing soil samples, surface water samples, or groundwater samples for the purpose of assessing the effect of a discharge on public health and the environment. Md. Code Ann., Envir. § 9-342.2.

58.     Unless enjoined by an order of the Court, the Defendants will continue to unlawfully discharge pollutants entrained in leachate from the coal combustion waste to groundwaters of the State.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, State of Maryland, Department of the Environment, respectfully requests that this Court enter judgment in its favor against Defendants, GenOn Maryland Ash Management, LLC and GenOn Mid-Atlantic, LLC, granting the following civil penalties and permanent injunctive relief:

A.      That the Court require the Defendants to cease discharging any pollutants to waters of the State from all locations not authorized by a NPDES/State discharge permit issued by the Department, and require the Defendants to take all steps necessary to come into permanent and consistent compliance with the prohibition on unpermitted discharges contained in Section 1342(a) of the Clean Water Act and to comply with Sections 9-322 and 9-323 of the Environment Article of the Maryland Code;

B.      That the Court enjoin the Defendants from further disposing of any coal combustion waste in any portion of the Disposal Site, and require the Defendants to close and cap the existing open disposal cells of coal combustion waste within one (1) year, in accordance with the requirements of COMAR 26.04.07.21.

C.      That the Court order the Defendants to demonstrate that all wastewater discharged from the Disposal Site's treatment systems meets established requirements set forth in the effective Discharge Permit and that all wastewater discharged from the Disposal Site is properly captured, contained, and treated so that it will prevent water pollution and will not cause or contribute to a violation of the surface water quality standards of COMAR 26.08.02.03-2, the groundwater quality standards of COMAR 26.08.02.09.C, and federal drinking water standards.

D.      That the Court order the Defendants to implement a system to insure that the extent of contamination from the leachate plume in groundwater is adequately evaluated and monitored, and that

15

necessary remedial actions are taken to capture, treat and prevent further water pollution from coal combustion waste disposal activities.

E.     That the Court require the Defendants within sixty (60) days to submit to the Department for review and approval a plan and schedule that will characterize the site-wide contamination and assess the extent of contamination of groundwater and surface waters in the vicinity of the Disposal Site, and a corrective action plan and timetable for Department's review and approval to implement potential remedial alternatives to assess, contain and prevent the off-site migration of the leachate plume to waters of the State and comply with established water quality standards.

F.     That the Court require GenOn Maryland Ash Management, LLC to comply with all terms and conditions of its Discharge Permit and any modification or renewal of the Discharge Permit.

G.     That the Court require the Defendants to take the following actions regarding drinking water wells near the Site:

(1)     Within thirty (30) days, submit to the Department for review and approval a plan and schedule for identifying all drinking water wells within a one mile radius of the Site and sampling a representative subset of those wells located down-gradient of the Site for sulfates and metals; and

(2)     Provide a replacement water supply in the event that such wells are identified by the Department as being contaminated by coal combustion waste activities at the Disposal Site.  The methodology for determining whether additional off-site drinking water wells are contaminated by coal combustion waste activities at the Disposal Site shall use sulfate as the primary indicator and may include, but not be limited to, other ash leachate characteristics, review of data including background water quality (temporal and spatial variability), physical location of the well in relationship to the

16

Disposal Site, and information from other wells that are being used to track the extent of the contamination.

     H.    .That the Court enter an injunction requiring the Defendants to perform the following monitoring and reporting activities:

     (1)    Conduct groundwater and surface water monitoring and sampling at the Disposal Site necessary to: (a) identify and prevent the discharge of pollutants exceeding any State water quality criteria, and (b) identify all the pollutants contained in discharges from the Disposal Site that have the reasonable potential to cause or contribute to an exceedance of any State water quality criteria. The Defendants shall submit to the Department for review and approval a water quality monitoring plan, including but not limited to, all monitoring currently required by the Discharge Permit as well as additional monitoring to characterize the presence of dissolved and total constituents in discharges, groundwater and surface water of "Little Stream," "Big Stream," and unnamed tributaries of the Potomac River. The plan shall establish additional in-stream sampling locations in "Little Stream" and "Big Stream," as well as representative sampling points in tributaries of the Potomac River and groundwater.

     (2)    Submit to the Department on a quarterly basis the results of all groundwater and surface water monitoring and the status of progress on implementing actions set forth in the approved plan. The quarterly reports shall highlight all data above Discharge Permit effluent limits, surface water or groundwater quality standards. The sampling results obtained during each calendar quarter shall be submitted to the Department no later than January 31st, April 30th, July 31st, and October 31st of each calendar year. The April 30th quarterly report for each year shall include a long-term trend analysis, and a summary of the status and effectiveness of the treatment systems at the Disposal Site, so as to

17

determine the effectiveness of remediation, to continue until the Department has determined that the Disposal Site complies with all surface and groundwater quality standards, and the Department notifies Defendants in writing that the remediation has been successful.

I.     That within sixty (60) days, the Defendants shall submit for the Department's review and approval, a plan and schedule for conducting benthic and fish tissue studies, and aquatic impact and acute and chronic toxicity testing of contaminated groundwater and wastewater discharged to "Little Stream," "Big Stream," and unnamed tributaries of the Potomac River.

J.     That the Court assess civil penalties against the Defendants of up to $32,500 per violation per day for violations prior to January 13, 2009, and up to $37,500 per violation per day for violations beginning January 13, 2009, for each violation of Section 1311 of the Clean Water Act or a Discharge Permit issued under Section 1342 of the Clean Water Act.

K.     That the Court assess the costs of litigation, including reasonable attorney's fees and expert witness fees, against the Defendants under Section 1365(d) of the Clean Water Act.

L.     That the Court assess civil penalties against the Defendants of up to $10,000 per violation per day for each violation of Sections 9-322 and 9-323 of the Environment Article of the Maryland Code.

M.     That the Court award the Department reimbursement for the costs of conducting environmental health monitoring or testing, including the cost of collecting and analyzing soil samples, surface water samples, or groundwater samples for the purpose of assessing the effect of a discharge on public health and the environment under Section 9-342.2 of the Environment Article of the Maryland Code.

N.     That the Court award such other and further relief as it deems just and appropriate.

18

Respectfully submitted,


DOUGLAS F. GANSLER
Attorney General of Maryland


STEVEN R. JOHNSON
Principal Counsel
Federal Bar No. 15163


RICHARD F. WADDINGTON
Assistant Attorney General
Federal Bar No. 25186

Maryland Department of the Environment
1800 Washington Boulevard, Suite 6048
Baltimore, Maryland 21230
Phone (410) 537-3034
Fax (410) 537-3943

Attorneys for State of Maryland, Department
of the Environment